Litaker v St. Luke's-Roosevelt Hosp. Ctr. (2004 NY Slip Op 50485(U))

[*1]

Litaker v St. Luke's-Roosevelt Hosp. Ctr.

2004 NY Slip Op 50485(U)

Decided on March 22, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 22, 2004

Supreme Court, New York County
Alice Litaker
against
St. Luke's-Roosevelt Hospital Center, et al.
116292/01

Sheila Abdus-Salaam, J.
this motion by defendants for an order pursuant to CPLR 3212 and/or CPLR 3211 (a) (7), dismissing the complaint against defendant Dr. James and dismissing the causes of action against the Hospital sounding in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA") and Public Health Law § 2805-b, is granted only to the following extent:
Plaintiff has not opposed that portion of the motion which seeks dismissal of the fourth cause of action alleging a violation of Public Health Law § 2805-b. Accordingly, that cause of action is dismissed.
[*2]
Plaintiff alleges in her first cause of action that defendants departed from accepted standards of medical care in their treatment of her; that she was prematurely discharged from the emergency room, and that she collapsed immediately upon exiting the emergency room and sustained a bi-malleolar fracture of the left ankle requiring open reduction surgery. The second and third causes of action allege violations of EMTALA (42 U.S.C. § 1395dd). Plaintiff claims that when she was treated in the Hospital emergency room on March 12, 2000, the Hospital failed to provide adequate medical screening examinations and wrongfully discharged her from the emergency room, and that these failures constitute a violation of EMTALA (42 U.S.C. § 1395dd).
Defendants have demonstrated that dismissal of the EMTALA causes of action is warranted. As was noted by the court in Brenord v. The Catholic Medical Center of Brooklyn and Queens, Inc. (133 F. Supp 2d 179 [E.D.N.Y. 2001]), EMTALA was enacted to prevent hospitals from "dumping" patients who are unable to pay (Id. p. 184). The statute requires appropriate medical screening by hospital emergency rooms. It also requires that where the hospital has determined that the patient has an emergency medical condition, the hospital must either provide treatment necessary to stabilize the patient's medical condition, or transfer the patient to another medical facility for such treatment. "Since EMTALA was not enacted to remedy negligent diagnosis, only refusals to follow regular screening procedures violate the statute (citation omitted). Faulty screening in a particular case, as opposed to disparate screening or refusing to screen at all, does not violate the statute (citation omitted)."(Id., p. 185).
Plaintiff has failed to allege that the Hospital did not screen her in the same way that it screened other patients to determine if she had an emergency medical condition. Furthermore, regarding her claim that she was prematurely discharged in violation of the statute, the stabilization requirement of EMTALA "is only triggered if a hospital determines that an emergency medical condition exists ***. A hospital that does not determine that there is an emergency medical condition has no duty under EMTALA to perform a further examination and stabilize the medical condition."(Id. p. 191). Here, plaintiff has not alleged that the Hospital determined that she had an emergency medical condition. Thus, she has not stated a cause of action pursuant to EMTALA under either a theory of failure to screen or failure to stabilize. Accordingly, the third and fourth causes of action are dismissed.
[*3]
Finally, the motion is denied to the extent that it seeks dismissal of the claim against defendant Dr. James. Defendants assert that because Dr. James was a resident acting under the supervision of an attending physician, Dr. Miller, Dr. James cannot be liable to plaintiff for malpractice as a matter of law. However, the cases cited by defendants involve situations where a resident - hospital employee was following the directions of a private attending physician (see Walter v. Betancourt, 283 AD2d 223; Filippone v. St. Vincent's Hospital and Medical Center, 253 AD2d 616; Martin v. Niagara Frontier Hockey Corporation, 177 AD2d 1006). Under those circumstances, it has been held "a hospital is sheltered from liability * * * where its employees follow the directions of the attending physician."
(Walter, supra). Here, unlike the situation in the aforementioned cases, the attending physician who was supervising Dr. James was apparently a hospital employee. Furthermore, the deposition testimony of Dr. James reveals that she took the plaintiff's history, examined plaintiff, prescribed medication, ordered tests and monitored plaintiff's gait prior to discharge. Thus, unlike the circumstances in Walter, supra, where there was no evidence that the resident "exercised any independent medical judgment", the record here shows that Dr. James was responsible for the treatment of plaintiff, notwithstanding that Dr. James was under the supervision of an attending physician employed by the hospital. Accordingly, defendants have not demonstrated that plaintiff does not have a cause of action for malpractice against Dr. James.
In sum, the motion is granted only to the extent that the second, third and fourth causes of action are dismissed.
Dated: 
J.S.C.
Check one: FINAL DISPOSITION NON-FINAL DISPOSITION